UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| LAURA WENKE,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>FOREST LABORATORIES, INC.,<br><br>　　　　Defendant. | Case No. 5:14-cv-01898-EJD<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Re: Dkt. No. 47 |

On June 3, 2014, Plaintiff Laura Wenke ("Plaintiff") was convicted of attempted premediated murder of her husband, Randall Wenke. The jury also determined that she was legally sane at the time she committed the crime. Her conviction was affirmed by the Court of Appeal for the First District, and the California Supreme Court and United States Supreme Court denied her petitions for review and certiorari.

Prior to her conviction, Plaintiff filed the instant suit against Defendant Forest Laboratories, Inc. ("Defendant"), alleging that her ingestion of Lexapro, an antidepressant, caused her to be in a "bizarre, dissociated, and violence-prone psychological state" on the date of the assault, and that she "unconsciously and/or unknowingly" stabbed her husband with a knife. Presently before the Court is a motion for judgment on the pleadings that Plaintiff's claims are barred by collateral estoppel and against public policy. This matter is suitable for decision without oral argument pursuant to Civil Local Rule 7-1(b), and the hearing scheduled for April 26, 2018 is VACATED. For the reasons set forth below Defendant's motion is GRANTED.

Case No.: 5:14-cv-01898-EJD
ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS
1

## I. BACKGROUND

Plaintiff alleges in her Complaint that, on September 15, 2011, Defendant's antidepressant medication, Lexapro, caused her to be in a "bizarre, dissociated, and violence-prone psychological state . . . during which she was out of touch with reality." Complaint ("Compl."), Dkt. No. 1, at ¶ 8. Plaintiff asserts that "[w]hile in that psychological state, plaintiff unconsciously and/or unknowingly attacked and stabbed her husband with a knife, causing him serious injuries." *Id*.

Plaintiff was charged with premeditated attempted murder and several other crimes. Declaration of Stacey McKenzie ("McKenzie Decl."), Dkt. No. 47, Ex. A.[1] She pleaded not guilty by reason of insanity. On June 3, 2014, Plaintiff was convicted of premeditated attempted murder, assault with a deadly weapon, assault with a stun gun, domestic violence, and inflicting great bodily injury. McKenzie Decl., Ex. B.

Following her conviction, the court held a second trial to determine whether Plaintiff was legally sane at the time of the attack. During that phase, several experts testified regarding Plaintiff's mental state and the impact that Lexapro could have had on it. McKenzie Decl., Ex. C, at 2045:17-2046:15; McKenzie Decl., Ex. D, at 1965:20-1971:26; 1981:23-1983:17. On June 11, 2014, the jury found that Plaintiff was legally sane at the time of the attack. McKenzie Decl., Ex. E.

Plaintiff appealed. On March 17, 2016, the Court of Appeal for the First District affirmed the jury's verdict. Declaration of Jennifer Paolucci ("Paolucci Decl."), Ex. G. In its decision, the Court of Appeal observed that

> there was overwhelming evidence defendant went to Randall's office with the intent of killing him. The note card found in defendant's purse and various e-mails sent from a Yahoo! account show defendant tricked Randall into staying late at the office by assuming the identity of "Perry Hadden" and arranging a meeting to discuss a potential project. Defendant's own account of the evening is wildly inconsistent. At trial, she testified she went to Randall's office to drop off some boxes and cleaning supplies. But before

---

[1] 1The court may take judicial notice of filings from other court proceedings. *United States v. Black*, 482 F.3d 1035, 1041 (9th Cir. 2007) (observing that a court "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue").

Case No.: 5:14-cv-01898-EJD
ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS
2

> departing for the office, defendant told her babysitter she was going for a run, and she told her neighbor she was going to the gym. Most damning of all, defendant composed a to-do list of steps for carrying out and covering up the crime. Those steps included picking up the getaway vehicle, changing outfits, "[m]ak[ing] sure its done," burning down the office, and disposing of the evidence. Further corroborating the prosecution's theory that defendant intended to bum down the office to cover up the crime, the police found the batteries had been taken out of the office smoke detectors. Additionally, in the bed of defendant's truck, the police found rags and linseed oil, which defendant knew from experience could spontaneously combust.

*Id*. at 11-12. The Court of Appeal also concluded that "the prosecution presented overwhelming evidence of premeditation, including evidence defendant prepared a to-do list for carrying out the crime." *Id.* at 13.

Plaintiff filed a petition for review with the California Supreme Court, which was denied on June 14, 2016. Paolucci Decl., Ex. H. Plaintiff then filed a petition for certiorari with the United States Supreme Court, which was denied on November 28, 2016. Paolucci Decl., Ex. I.

Plaintiff filed the instant products liability action on September 16, 2013. Compl. On April 21, 2015, the Court stayed the case pending final exhaustion of the then-pending appeal of Plaintiff's criminal conviction. Dkt. No. 37. On April 19, 2017, the parties notified the Court that "the criminal appeal has reached final resolution," Dkt. No. 42, and the Court issued a case management order, Dkt. No. 46. On December 18, 2017, Defendant filed the instant motion for judgment on the pleadings, seeking dismissal of all of Plaintiff's claims as barred by collateral estoppel and against public policy. Dkt. No. 47.

**II. LEGAL STANDARD**

Federal Rule of Civil Procedure 12(c) allows a party to move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." Judgment on the pleadings is proper when "'there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law.'" *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (quoting *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009)).

The standard for a Rule 12(c) motion is essentially the same as that for a Rule 12(b)(6) motion. *Id*. Thus, a court must presume all facts alleged in the complaint as true, and determine

Case No.: 5:14-cv-01898-EJD
ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS
3

whether the complaint demonstrates a plausible entitlement to a legal remedy. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007) (discussing the standard for dismissal under Rule 12(b)(6)). It may also consider materials subject to judicial notice without converting the motion into one for summary judgment. *United States v. 14.02 Acres*, 547 F.3d 943, 955 (9th Cir. 2008).

## III. DISCUSSION

### A. Collateral Estoppel

Defendant argues that all of Plaintiff's claims should be dismissed as barred by collateral estoppel. The Court agrees.

"In general, collateral estoppel precludes a party from relitigating issues litigated and decided in a prior proceeding." *Gikas v. Zolin*, 6 Cal. 4th 841, 848 (1993).[2] Collateral estoppel can be applied in a civil action to bar issues resolved by a related criminal action. *Teitelbaum Furs, Inc. v. Dominion Ins. Co., Ltd.*, 58 Cal. 2d 601, 603 (1962). For collateral estoppel to apply, the following threshold requirements must be met:

> First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding. Second, this issue must have been actually litigated in the former proceeding. Third, it must have been necessarily decided in the former proceeding. Fourth, the decision in the former proceeding must be final and on the merits. Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding.

*Gikas*, 6 Cal. 4th at 849 (citing *Lucido v. Super. Ct.*, 51 Cal. 3d 335, 341 (1990)).

Here, Defendant argues that collateral estoppel bars Plaintiff from re-litigating the issue of whether she was legally responsible for her crime. Mot. 11-12. The parties do not dispute that most of the threshold requirements are met with respect to this issue: This issue was actually litigated and necessarily decided in the criminal case, as it was the ultimate question presented to the jury. McKenzie Decl., Ex. B; *see also* Stay Order, Dkt. No. 37, at 3. The decision was on the merits and is final, as Plaintiff has exhausted all of her avenues for appeal. Paolucci Decl., Exs. G,

---

[2] Because this is a diversity action, this Court applies the California law of issue preclusion. *See Jacobs v. CBS Broadcasting, Inc.*, 291 F.3d 1173, 1177 (9th Cir. 2002).

Case No.: 5:14-cv-01898-EJD
ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS
4

H, I. Finally, the privity requirement is satisfied, as Plaintiff is a party to both cases.

The only factor that remains, then, is whether the issues are identical. In California, "[t]he 'identical issue' requirement addresses whether 'identical factual allegations' are at stake in the two proceedings, not whether the ultimate issues or dispositions are the same." *Lucido*, 51 Cal. 3d at 342. As one California Court of Appeal has explained:

> Collateral estoppel bars relitigation of the same issues; it does not require identity of legal theories or causes of action. If it did, there would be no end to litigation for injuries arising out of the same facts, as long as a party could offer another legal theory by which the same issue might be differently decided.

*Evans v. Celotex Corp.*, 194 Cal. App. 3d 741, 746-47 (1987). Thus, the Court must determine "whether a particular issue was raised even though some legal theory, argument, or matter relating to the issue was not expressly mentioned or asserted." *See Ayala v. Dawson*, 13 Cal. App. 5th 1319 (2017) (quoting *Clark v. Lesher*, 46 Cal. 2d 874, 880-881 (1956)).

Here, the issue of whether Plaintiff is legally responsible for her crime is identical across this case and the criminal case. As discussed above, in the criminal case, the jury decided that Plaintiff was guilty of premeditated attempted murder, and that Plaintiff was legally sane at the time she committed the crime. McKenzie Decl., Exs. B and E. As part of this, the jury considered Plaintiff's mental state at the time of the crime, including the extent to which Plaintiff appreciated and had control over her actions, and determined whether it was such that she could be held responsible for her crime. *See, e.g.*, McKenzie Decl., Ex. C, at 2045:17-2046:15; McKenzie Decl., Ex. D, at 1965:20-1971:26; 1981:23-1983:17.

The instant case involves the same issue. As part of determining Plaintiff's product liability claims, a jury will have to decide whether Lexapro—not Plaintiff—was responsible for Plaintiff's crime. *See* Compl. ¶¶ 8, 15, 23 (alleging that Lexapro caused her to be in a "bizarre, dissociated, and violence-prone psychological state . . . during which she was out of touch with reality"). This invites precisely the same inquiry into Plaintiff's mental state that the jury undertook in the criminal trial. Answering it involves same evidence, such as the to-do list and expert testimony on Lexapro and its impact on Plaintiff's mental condition. As such, this issue is

Case No.: 5:14-cv-01898-EJD
ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS
5

identical to issues already considered and decided in Plaintiff's criminal case.

Plaintiff's arguments to the contrary are not persuasive. Plaintiff argues that the issues are not identical because her product liability claims here turn on a theory of "irresistible impulse"—that she suffered an "irresistible impulse" brought on by Lexapro which broke the chain of causation between Plaintiff's actions and her crime such that Plaintiff cannot be held responsible. Opp. 1-8. Plaintiff argues that, because California does not recognize "irresistible impulse" as a sanity defense, this issue was not decided in the criminal case and thus the issue here is not identical. *Id*.

Plaintiff confuses issue with legal theory. As discussed above, issues need not be raised by the same legal theory in order to be identical. *Lucido*, 51 Cal. 3d at 342. Thus, whether or not the legal theory of "irresistible impulse" was considered in Plaintiff's criminal case is of no import. Instead, what matters is whether the factual allegations match, such that the Court is being asked to decide the same issue that has been decided before.

Such is the case here. In order to decide Plaintiff's product liability claims under an "irresistible impulse" theory, a jury will need to decide whether Lexapro "cause[d] mental illness which result[ed] in an uncontrollable impulse." *Tate v. Canonica*, 180 Cal. App. 2d 898, 915, 5 Cal. Rptr. 28, 40 (Ct. App. 1960). The jury's earlier determination that Plaintiff's crime was premeditated ends this inquiry. As a matter of logic, an act that was premeditated cannot be an uncontrollable impulse. For example, "premeditation" has been defined as "[t]he act of meditating in advance; deliberation upon a contemplated act; plotting or contriving; a design formed to do something before it is done. Decision or plan to commit a crime, such as murder, before committing it." Black's Law Dictionary, 6th ed. 1997. By contrast, an "impulse" is a "[s]udden urge or inclination; thrusting or impelling force within a person." *Id.* Other courts have reached similar conclusions in the context of suicide. *See, e.g.*, *Kelly v. Echols*, Case No. CIV-F-05-118, 2008 WL 4163221 (E.D. Cal. 2008); *Walsh v. Tehachapi Unified School Dist.*, 997 F. Supp. 2d 1071 (E.D. Cal. 2014); *Rollins v. Commonwealth of Va.*, 207 Va. 575 (Va. Sup. Ct. 1966). Thus, in order to maintain their product liability claims under an "irresistible impulse" theory, Plaintiff

Case No.: 5:14-cv-01898-EJD
ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS
6

would have to re-litigate the same issues the jury decided when it concluded that Plaintiff's crime was premeditated. As such, the issues are identical.

Because the issues are identical and all of the remaining threshold requirements are satisfied, collateral estoppel applies and bars Plaintiff's product liability claims. As such, the Complaint fails to articulate a plausible entitlement to a legal remedy and Defendant is entitled to judgment as a matter of law. Accordingly, the Court GRANTS Defendant's motion.

### B. Public Policy

Because collateral estoppel is sufficient to decide Defendant's motion, the Court need not reach Defendant's arguments regarding public policy and declines to do so.

## IV. ORDER

Defendant's motion for judgment on the pleadings is GRANTED. All of the claims in the Complaint are DISMSSED WITH PREJUDICE. Judgment will be entered in favor of Defendant, and the Clerk shall close this file.

**IT IS SO ORDERED.**

Dated: April 23, 2018

EDWARD J. DAVILA
United States District Judge